**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTSERN DIVISION**

| | |
|---|---|
| DENNIS L. VARGAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 2:19-cv-00016-SEP |
| v. ) | |
| ) | |
| DEAN MINOR, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Dennis L. Vargas's Petition for Writ of Habeas Corpus. Doc. [1]. For the reasons set forth below, the Petition will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, convicted of one count of driving while revoked and one count of chronic driving while intoxicated, is an inmate in the Moberly Correctional Facility in Moberly, Missouri. *Id.* at 1. Petitioner was sentenced to seven years and twenty years, respectively, both sentences to run concurrently, for a total of twenty years' imprisonment in the Missouri Department of Corrections. *Id.*

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Around 2:30 p.m. on April 24, 2012, Sergeant Robert McGinnis, a Missouri State Highway Patrol Trooper, was standing in a construction zone on I-70 when he observed a car that was following a tractor-trailer too closely. McGinnis pulled over the car and spoke with the driver, Vargas, from the passenger side of the vehicle. When McGinnis asked for his driver's license, registration, and proof of insurance, Vargas grabbed a handful of papers and fumbled through them, dropping some of them on the floor. As Vargas was looking through the papers, McGinnis noticed that his eyes appeared watery, bloodshot, and glassy. Vargas eventually produced his registration and admitted to McGinnis that his driver's license had been revoked.

> When Vargas spoke to McGinnis, he mumbled and gave "real short" answers. McGinnis asked Vargas to sit in the police car while he ran a computer check on Vargas's license. While in the police car, McGinnis began to smell alcohol on Vargas's breath, and the smell grew stronger over time. McGinnis asked Vargas whether he had been drinking. Vargas initially denied that he had. Later, however, he admitted that he had drunk a half-gallon of whiskey and a case of beer the night before and that he had slept only a couple of hours.

>McGinnis then asked Vargas to perform several field sobriety tests. During the horizontal gaze nystagmus test, McGinnis directed Vargas to move only his eyes, but Vargas kept moving his head. McGinnis observed a "lack of smooth pursuit" in both of Vargas's eyes and a distinct nystagmus, which indicated impairment. Vargas demonstrated four of six clues showing indicia of impairment during the horizontal gaze nystagmus test. From McGinnis's training and experience, when a person has four clues showing indicia of impairment on this test, "it's highly likely that the person is blowing a .10."
>
>Next, McGinnis asked Vargas to perform the one-leg stand test. Although McGinnis had asked Vargas to wait to start the test until he was instructed to do so, Vargas started early. Vargas swayed while attempting to balance, used his arms for balance, put his elevated foot down after only 10 seconds of the 30-second test, and refused to finish the test. Vargas exhibited three of four indicia of impairment during the one-leg stand test.
>
>The last test McGinnis asked Vargas to perform was the Romberg test. In this test, McGinnis directed Vargas to stand with his heels and toes together, tilt his head back, close his eyes, and estimate 30 seconds. Vargas swayed while he stood for 32 seconds. When McGinnis asked him how many seconds he had estimated, he said 28 seconds. Vargas's failure to follow the instructions indicated impairment.
>
>Based on his training and experience, his observations of Vargas, and Vargas's performance on the field sobriety tests, McGinnis believed that Vargas was too impaired to safely operate a car. He arrested Vargas for driving while intoxicated.
>
>While Vargas was in custody in McGinnis's patrol car, another Missouri State Highway Patrol Trooper, Corporal Greg Primm, handed Vargas an item from Vargas's car. As he did so, Primm smelled the odor of alcohol emanating from Vargas, and he noticed that Vargas's face was slack and his eyes were glassy. To Primm, Vargas appeared intoxicated.
>
>While McGinnis was taking Vargas to the Saline County Jail, he asked Vargas to take a breath-alcohol test. McGinnis advised Vargas of the implied consent law, including the admonition that his refusal to take the test could be used against him later in court. Vargas refused to take the test.
>
>The State subsequently charged Vargas as a chronic offender with driving while intoxicated and driving while revoked. A jury trial was held, and the jury found Vargas guilty on both counts.

Doc. [8-6] at 3-5 (internal citations omitted).

On direct appeal, Petitioner argued that the (i) the evidence was insufficient to support a conviction because the State failed to adduce sufficient evidence to support a finding that Petitioner was under the influence of alcohol while he operated his vehicle, and (ii) the trial court plainly erred in failing to *sua sponte* declare a mistrial after a venireperson commented that he knew Petitioner from

2

his time in jail ministry. Docs. [8-4] at 13, 14; [8-6] at 1. The Missouri Court of Appeals upheld the conviction in all respects. Doc. [8-6] at 1.

On December 2, 2014, Petitioner filed a *pro se* motion for post-conviction relief under Missouri Rule 29.15. Doc. [8-8] at 8. On February 3, 2015, counsel entered her appearance on Petitioner's behalf and filed a timely amended motion on March 2, 2015. *Id.* at 18, 19-46. In the amended motion, Petitioner claimed that counsel was ineffective at trial for failing to: (i) object and request a mistrial due to the jury venireperson's remarks that the person knew the Petitioner from working in prison ministry; (ii) notify the court of certain errors in Petitioner's sentencing assessment report; (iii) call Rita Hernandez and Kenneth Burwell as witnesses, (iv) call Petitioner as a witness; and (v) protect Petitioner's speedy trial rights and challenge the accuracy of the video recording of Petitioner's arrest. *Id.* at 20-28. In the *pro se* motion, Petitioner also claimed ineffective assistance in that his trial counsel failed to: (vi) object to the driving-while-intoxicated instruction; (vii) present evidence that Petitioner had the "disease of alcohol"; (viii) object to the Court's determination as to Petitioner's status as a chronic driving-while-intoxicated offender and finding that Petitioner had the requisite number of prior convictions to enhance the charge against Petitioner for driving while revoked and suspended to a class D felony; (ix) object to the jury seeing the Petitioner's restraints during trial; (x) object to the State's evidence based upon a lack of probable cause to support the vehicular stop; and (xi) object to the Court's sentencing in excess of the last plea offer the State made to Petitioner. *Id.* at 48-49. After an evidentiary hearing, the motion court denied the amended Rule 29.15 motion in all respects. *Id.* at 49, 54.

Appealing the denial of his Rule 29.15 motion, Petitioner raised two ineffective assistance claims based on: (i) trial counsel's failure to object and move for mistrial on account of the venireperson's aforementioned statements; and (ii) trial counsel's failure to point out errors in the sentencing assessment report. Doc. [8-9] at 12-13. On both points, the Missouri Court of Appeals affirmed the motion court's denial. Doc. [8-11] at 1.

On March 4, 2019, Petitioner filed the present suit, raising the following nine grounds: (1) the trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of the evidence and imposing judgment and sentence; (2) the trial court abused its discretion by not declaring a mistrial *sua sponte* after a venireperson commented that he knew Petitioner from his work in jail ministry; (3) trial counsel rendered ineffective assistance by failing to point out errors in the sentencing assessment report; (4) the statute under which Petitioner was convicted is unconstitutional under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; (5) appellate counsel was ineffective

3

by failing to challenge the statute under which Petitioner was convicted for the reasons given in Ground 4; (6) the evidence was insufficient to support a conviction because Petitioner suffered a chronic condition and therefore could not act knowingly; (7) trial counsel was ineffective by failing to call Petitioner to testify on his own behalf; (8) trial counsel was ineffective for failing to call Rita Hernandez and Kenneth Burwell to testify at trial; and (9) trial counsel was ineffective for failing to insure that Petitioner's speedy trial rights were protected.  Docs. [1] at 5, 7, 8, 16; [8] at 4-5. Respondent contends that because two of Petitioner's claims were previously litigated and the state courts' decisions were reasonable, those decisions are entitled to deference.  Doc. [8] at 5.  All other claims, according to Respondent, have been procedurally defaulted and are meritless. *Id.* at 6.

## LEGAL STANDARD

**I.     Standard for Reviewing Habeas Corpus Claims on the Merits**

A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, the judge must not issue a writ if an adequate and independent state-law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

"Federal habeas review . . . exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act (AEDPA)] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  "[A]

4

state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that the state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

### I. Insufficiency of the Evidence

In Grounds 1 and 6, Petitioner raises insufficiency of the evidence claims. Doc. [1] at 5, 16. In Ground 1, Petitioner argues that the trial court erred in overruling Petitioner's motion for judgment of acquittal because the evidence was insufficient to prove that Petitioner operated his vehicle while under the influence of alcohol. Doc. [1] at 5. In Ground 6, Petitioner argues that there was insufficient evidence to prove that Petitioner acted knowingly because of a chronic mental deficiency. *Id.* at 16.

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). When a habeas petitioner challenges his conviction on the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972) *overruled on other grounds by Ramos v. Louisiana*, 140 S. Ct. 1390 (2020)). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319); *see also United States v. Whitlow*, 815 F.3d 430, 435 (8th Cir. 2016) (explaining that reviewing courts do "not reweigh the evidence or assess the credibility of witnesses") (citing *United States v. Dugan*, 238 F.3d 1041, 1044-45 (8th Cir. 2001)).

Once a habeas petitioner "has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319. "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal

5

offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655 (quoting *Jackson*, 433 U.S. at 324 n.16) (internal citation omitted). Where the jury "was convinced" of a petitioner's guilt, as it was here, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656; *United States v. Manning*, 738 F.3d 937, 944-45 (8th Cir. 2014).

Further, when "the federal courts review a state-court ruling under the constraints imposed by the AEDPA, the federal court must accord an additional and independent, high standard of deference." *White v. Wheeler*, 577 U.S. 73, 78 (2015) (quoting *Uttrecht v. Brown*, 551 U.S. 1, 7 (2007)) (internal quotation marks and citations omitted). Under that "twice-deferential" standard of review, a "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (internal quotation marks and citation omitted); *see also Coleman*, 566 U.S. at 651 ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015) (applying *Jackson*'s "narrow standard of review," explaining that, under AEDPA, a court "may grant relief only if [it] find[s] the [state court's] conclusion that the evidence satisfied the *Jackson* sufficiency of the evidence standard both incorrect and unreasonable") (quoting *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011)) (internal quotation marks omitted). With these considerations in mind, the Court turns to Petitioner's insufficiency claims.

### A. Ground 1: Evidence that Petitioner operated his motor vehicle while under the influence

Petitioner argues that the trial court erred in denying his motion for judgment of acquittal and imposing judgment and sentence, as the evidence was insufficient to establish that he was under the influence of alcohol when he operated his vehicle. Docs. [1] at 5; [8-4] at 13.

On direct appeal, the Missouri Court of Appeals considered Petitioner's insufficiency of the evidence claim, and stated:

> In Point I, Vargas contests the sufficiency of the evidence to support his conviction for driving while intoxicated. Specifically, he claims the State failed to prove that he was under the influence of alcohol at the time he operated his vehicle.
>
> When reviewing a challenge to the sufficiency of the evidence, our role "is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). We consider the evidence and inferences in the light most favorable to the verdict, disregarding all contrary evidence

6

and inferences. *Id.* at 407-08. We defer to the jury's credibility determinations, recognizing that the jury was entitled to believe "all, some, or none" of the testimony of the witnesses. *Id.* at 408.

Vargas was charged with driving while intoxicated under Section 577.010, RSMo Cum. Supp. 2013. Section 577.010.1 provides that a person commits the crime of driving while intoxicated "if he operates a motor vehicle while in an intoxicated or drugged condition." "[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 577.001.3.

"The State is not required to establish an actual measure of a defendant's blood alcohol content to prove the defendant was driving while intoxicated." *State v. Seitz*, 384 S.W.3d 384, 387 (Mo. App. 2012). The fact of intoxication, rather than the degree of intoxication, is the significant issue. *Id.* Where there is no chemical analysis showing the defendant's blood alcohol content, the State can prove intoxication "solely through the testimony of a witness who had a reasonable opportunity to observe the defendant." *Id.* "[I]ntoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes." *State v. Scholl*, 114 S.W.3d 304, 307 (Mo. App. 2003).

In this case, McGinnis observed Vargas perform three separate field sobriety tests and exhibit signs of intoxication in each one. Vargas showed four clues showing indicia of impairment during the horizontal gaze nystagmus test, which, by itself, is substantial evidence of his intoxication. *Seitz*, 384 S.W.3d at 387-88. He could not maintain his balance and could only remain on one foot for 10 seconds in the one-leg stand test. Lastly, he failed to follow the instructions for the Romberg test. Vargas's performance on the field sobriety tests demonstrated a lack of body coordination and impaired motor reflexes associated with intoxication.

McGinnis also observed signs of intoxication in Vargas independent of the field sobriety tests. McGinnis observed that Vargas smelled strongly of alcohol and had bloodshot, watery, and glassy eyes -- observations that Primm corroborated during his brief interaction with Vargas. Vargas mumbled when he spoke and had poor hand dexterity when he was going through his papers. These are all known indicia of intoxication. *State v. Edwards*, 280 S.W.3d 184, 189 (Mo. App. 2009). Additionally, Vargas refused to take a breath-alcohol test, despite being advised of the consequences. His refusal is further indication of intoxication. *Id.* at 189-90. Vargas even admitted that he had consumed large amounts of alcohol the prior evening and gotten only a couple of hours of sleep.

Viewed in the light most favorable to the verdict, McGinnis's observations of Vargas during the field sobriety tests and independent of those tests, combined with McGinnis's opinion, based on his experience and training, that Vargas was intoxicated, constituted sufficient evidence from which a reasonable juror could have found Vargas guilty of driving while intoxicated. *Id.* Point I is denied.

Doc. [8-6] at 5-7.

After independent review of the record, the Court finds that the Missouri Court of Appeals offers an accurate description of the evidence offered at trial regarding the issue of Petitioner's intoxication. Considering the limited review permitted by AEDPA and recognizing that the Missouri Court of Appeal's decision on this Ground, which was raised in Petitioner's direct appeal, is entitled to deference, the Court cannot say that the Missouri Court of Appeals decision was objectively unreasonable. The trial transcript contains considerable testimonial evidence regarding the police officer witnesses' training and expertise in DWI detection. *See, e.g.,* Doc. [8-1] at 180:1-185:4. Additionally, the officers testified to their observations about Petitioner's behaviors and conditions that corroborated their belief that Petitioner was under the influence when he was pulled over. *See, e.g., id.* at 197:5-234:10. Because the jury was at liberty to credit the officers' testimony regarding their knowledge and training in DWI detection, as well as their testimony regarding their personal observations of Petitioner at the scene, the Court cannot say that the Missouri Court of Appeals' determination was objectively unreasonable and that the jury's finding fell below bare rationality. Ground 1 is denied.

### B. Ground 6: Evidence that Petitioner acted knowingly due to a chronic mental deficiency

In Ground 6, Petitioner argues that the evidence was insufficient to demonstrate that Petitioner acted knowingly because he suffered from a chronic mental deficiency. Doc. [1] at 16. That claim lacks merit. Even assuming that the prosecution was required to prove that Petitioner acted with knowledge with respect each element of the offense,[1] the evidence offered at trial, construed in a light most favorable to the verdict, *see Jackson*, 443 U.S. at 319, supports a jury finding that Petitioner knowingly performed each essential element.

Officer McGinnis testified that the traffic stop was precipitated by his observation of a green Lincoln Continental traveling dangerously close to a tractor trailer in a construction zone. Doc. [8-1] at 186:19-189:11. McGinnis testified that after he performed a traffic stop, he noticed that Petitioner

---

[1] Missouri's "driving while intoxicated" offense contains no *mens rea* term. Mo. Rev. Stat. § 577.010 (2012). While Missouri law generally requires proof beyond a reasonable doubt that a defendant acted at least knowingly when no *mens rea* is given in the defined offense, Mo. Rev. Stat. § 562.021.3 (2012), another statute provides an exception for felonies and misdemeanors where "no mental state is prescribed by the statute defining the offense, and imputation of a culpable mental state to the offense is clearly inconsistent with the purpose of the statute defining the offense or may lead to an unjust result." Mo. Rev. Stat. § 562.026(2) (2012). The Court has not found any case indicating that "driving while intoxicated" requires proof that the defendant acted with knowledge or that the offense falls within § 562.026(2)'s *mens rea* exception. Whether Missouri's "driving while intoxicated" offense falls within § 562.026(2)'s exception is a question better addressed by the Missouri courts. Thus, since it is not necessary to the resolution of Petitioner's claim, the Court declines to decide it.

8

was disheveled, fumbling, and sporting "watery, bloodshot, glassy, [and] staring" eyes. *Id.* at 197:15-198:24. He also testified that as he continued through the traffic stop procedures, he detected the odor of alcohol on Petitioner's breath, *id.* at 201:21-203:13, and that Petitioner admitted to drinking a "half-gallon of whiskey and a case of beer," the night before, *id.* at 207:18-210:8. Officer McGinnis testified that he performed various field sobriety tests, which indicated that Petitioner was under the influence. *Id.* at 214:10-15; 223:10-16; 228:3-231:17; 231:23-234:3. McGinnis also testified that Petitioner was asked to submit to a breathalyzer test and informed him of the implied consent law. *Id.* at 237:15-238:24. Petitioner declined to take the breathalyzer test. *Id.* at 238:21-24, 265:21-266:17. The foregoing evidence, construed in a light favorable to the verdict, is sufficient to support a jury finding beyond a reasonable doubt that Petitioner knowingly operated the motor vehicle while aware that he was under the influence of alcohol. *See* Mo. Rev. Stat. § 562.016.3. Ground 6 is denied.

**II.        Trial Court's Failure to *Sua Sponte* Declare a Mistrial**

In Ground 2, Petitioner argues that the trial court erred in failing to declare a mistrial *sua sponte* after a venireperson commented that he knew the Petitioner through jail ministry. Doc. [1] at 7. Petitioner raised this claim on direct appeal and the Missouri Court of Appeals denied the claim, giving the following explanation:

> In Point II, Vargas contends the circuit court erred in not declaring a mistrial *sua sponte* after a venireperson commented that he knew Vargas through the jail ministry. Vargas asserts that the comment implied that he had prior convictions, a fact which the jury could have used as evidence of his guilt.
>
> During jury selection, the prosecutor asked if anyone knew Vargas. Juror 32 raised his hand:
>
>> [Prosecutor]: How is it that you think you know him?
>> [Juror 32]: Because I do the jail ministry in the Saline County jail.
>> [Prosecutor]: You're involved in the jail ministry. What does that entail?
>> [Juror 32]: I go and see the people that are in jail, share Christ. So I know all the prisoners in jail out there.
>> [Prosecutor]: So you've had some personal interaction with Mr. Vargas at some point in time?
>> [Juror 32]: (The Venireman nods head).
>> [Prosecutor]: Would your interaction with him, would that make it difficult for you or with -- maybe more generally, would your involvement in the jail ministry make it difficult for you to be fair and impartial in a criminal case?
>> [Juror 32]: If it was somebody I didn't know, I think it would be a lot easier. If it would be somebody I know, I would find it hard to be impartial. Sorry.
>
> Later, the prosecutor asked if anyone would have difficulty casting judgment in the case. Juror 32 again raised his hand:

[Prosecutor]: Juror Number 32, you would also have difficulty?
[Juror 32]: Due to the fact that it's personal, yeah.
[Prosecutor]: That would be a factor for you?
[Juror 32]: I mean, you know . . .
The Court: I'm sorry, sir?
[Juror 32]: I said, I shared Christ with him out at the jail. I don't want to be in a judgment seat of him, for this man. So, I mean, I don't have a problem serving on a jury, it's just someone that I know.
[Prosecutor]: It would be more difficult?
[Juror 32]: Yeah.

Juror 32 was struck for cause. Vargas did not object to any of his comments and did not raise this issue in the motion for new trial. He requests plain error review. Plain error will be found only where "the alleged error facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012) (internal quotation marks and citations omitted).

"'Appellate courts are wary of claims that a trial court erred in failing to declare a mistrial *sua sponte* in a criminal case.'" *State v. Taylor*, 166 S.W.3d 599, 608 (Mo. App. 2005) (citation omitted). This is because a judge who declares a mistrial *sua sponte* "'may thereafter be confronted by the defendant's contention that he cannot be retried.'" *Id.* (citation omitted). Also, convicting the circuit court of an error that the defendant failed to put forth "'allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal.'" *Id.* (citation omitted).

The circuit court is in the best position to determine the impact of a potential juror's comments upon other panel members. *State v. Kelley*, 83 S.W.3d 36, 41-42 (Mo. App. 2002). Hence, the court is afforded "broad discretion in determining whether a venire panel should be dismissed." *State v. Ware*, 326 S.W.3d 512, 520 (Mo. App. 2010). Because we will not reverse the court's decision as to whether to grant a mistrial without a clear showing of an abuse of discretion, we will not reverse the court's failure to grant a mistrial *sua sponte* without a clear showing of a manifest abuse of discretion that resulted in manifest injustice or a miscarriage of justice. *State v. Carr*, 50 S.W.3d 848, 856 (Mo. App. 2001).

"A comment made by a particular venireperson does not require dismissal of the entire venire unless the statement was so inflammatory and prejudicial as to infringe upon a defendant's right to a fair trial." *Ware*, 326 S.W.3d at 520. In this case, the only thing that the jury panel heard Juror 32 say was that he knew Vargas through his ministry at the jail. At most, the jury panel could infer from Juror 32's comments that he met Vargas during either the approximately twelve months that Vargas was in jail awaiting trial for these offenses or some other time when Vargas was in jail after being arrested. Contrary to Vargas's contention, Juror 32's comments did not "clearly inform[ ]" the jury that Vargas was incarcerated for prior *convictions*. See *State v. Crenshaw*, 852 S.W.2d 181, 184 (Mo. App. 1993) (finding no manifest injustice resulted

10

>  from venireperson's comment that she was a licensed bail bondsman who had had the defendant out on bond before, as her comments showed only that the defendant had been accused of other crimes, not that he had ever been adjudicated guilty of anything, and also showed that she was "confident enough" of the defendant "that she was willing to accept the risk of surety on his bond").
>
>  Appellate courts have consistently held that references by a venireperson to the defendant's prior interactions with police, without reference to a conviction, are not so inflammatory as to prejudice the defendant and deprive him of a fair trial. See *State v. Weekley*, 92 S.W.3d 327, 329-31 (Mo. App. 2002) (venireperson stated that he had seen the defendant's "name in the police records," and that he had seen in the paper that the defendant had "been arrested a couple of times"). See also *State v. Stewart*, 296 S.W.3d 5, 10-11 (Mo. App. 2009) (venireperson, who was a uniformed police officer, stated that, as a police officer, she had "previous knowledge" of the defendant and did not think that she could be fair and impartial).
>
>  We do not find that Juror 32's comments concerning his interaction with Vargas through the jail ministry were so inflammatory and prejudicial that they deprived Vargas of a fair trial. Indeed, like the venireperson's comments in *Crenshaw*, 852 S.W.2d at 184, Juror 32's comments could have been interpreted favorably toward Vargas, as he stated that he had "shared Christ" with Vargas. Accordingly, Vargas has not clearly shown that the circuit court's failure to declare a mistrial *sua sponte* constituted a manifest abuse of discretion warranting plain error relief. Point II is denied.

Doc. [8-6] at 7-11.

The Missouri Court of Appeals accurately described the contents of the transcript portions documenting the exchange between the prosecutor and Juror 32. Doc. [8-1] at 55:5-56:9, 125:18-126:25. While the discussion indicated that Juror 32 was familiar with Petitioner through jail ministry, it did not indicate whether Petitioner was serving time for prior convictions or was merely awaiting the trial that resulted in the conviction he presently challenges. Moreover, Juror 32's statements regarding his inability to be impartial reflect no position, one way or the other, on Petitioner's guilt. Whether the state circuit court should decide to *sua sponte* declare a mistrial is entitled to extraordinary deference, as such a decision is committed to the discretion of the circuit court under Missouri law. *State v. Fassero*, 256 S.W.3d 109, 115 (Mo. banc 2008) (noting that the decision to declare a mistrial "rests within the sound discretion of the trial court"); *see also Fenstermaker v. Halvorson*, 920 F.3d 536, 540-41 (8th Cir. 2019) (noting that a state court's decision to declare a mistrial *sua sponte* "is reserved to the 'broad discretion' of the trial judge handling individual cases.") (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)). Consequently, the Court cannot say that the trial court's failure to declare a mistrial *sua sponte* amounted to a decision contrary to clearly established federal law or was otherwise

11

an unreasonable application of clearly established federal law warranting federal habeas relief. Ground 2 is denied.

### III.    Ineffective Assistance of Trial Counsel

In Grounds 3, 7, 8, and 9, Petitioner argues that his trial counsel was ineffective for myriad reasons. Doc. [1] at 8, 16. In Ground 3, Petitioner argues that trial counsel should have pointed out errors in the sentencing assessment report. *Id.* at 8. In Ground 7, Petitioner argues that trial counsel should have called petitioner to testify at trial. *Id.* at 16. In Ground 8, Petitioner argues that trial counsel should have called Rita Hernandez, Kenneth Burwell, and others to testify at trial. *Id.* And in Ground 9, Petitioner argues that trial counsel failed to ensure that Petitioner's speedy trial rights were protected. *Id.*

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show that "[h]is counsel's performance as deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). To show deficient performance, Petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [Petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). It is not sufficient for Petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance[.]" *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Williams*,

12

695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "If the state court reasonably could have concluded that [Petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Id.* at 832 (internal quotation marks omitted).

### A.  Ground 3:  Failure to Point Out Sentencing Assessment Report Errors

Petitioner argues that trial counsel was ineffective for failing to point out errors in the sentencing assessment report. Doc. [1] at 8. Denying this claim on review of Petitioner's amended Rule 29.15 motion, the Missouri Court of Appeals stated:

> In his second point on appeal, Vargas claims the motion court erred in denying his Rule 29.15 motion. He says he was denied effective assistance of counsel when his trial attorney failed to point out errors in the sentencing assessment report, leaving the court with inaccurate information upon which to impose sentence. Vargas asserts that a reasonable probability exists that the result of the sentencing hearing would have been different if his trial counsel had ensured that the trial court had accurate information before assessing punishment.
>
> Specifically, Vargas complains about the statement in the SAR that Vargas said he used methamphetamine the night before he was arrested while driving on I-70. Vargas claims that he told the SAR writer about methamphetamine use in the past but not the night before the arrest. He says he was not permitted to see the SAR until he was in court for sentencing and that he was unable to read it because he did not have his reading glasses. Vargas argues that he told his trial counsel that he used alcohol the night before the arrest but never said he used methamphetamine. He says he was frustrated by having to stay in county jail for so long so he decided to proceed with sentencing even though he had not read the SAR.
>
> In arguing for a twenty-two year sentence, the prosecutor pointed out to the court that the SAR writer stated Vargas told her he had used meth and alcohol the night before he was arrested. Because the statement about methamphetamine was never corrected, Vargas argues the court's twenty[-]year sentence was based on inaccurate information. Vargas concludes the court would have imposed a shorter sentence without the portion in the SAR regarding methamphetamine use the night prior to his arrest.
>
> With respect to the SAR, the motion court found the following:
>
> 25.  Trial counsel did not recall Movant having any objections to or requesting any modifications or changes to the Sentencing Assessment Report ("SAR") prepared in the case.
>
> 26.  Movant testified that there were numerous inaccuracies in the SAR.
>
> 27.  Movant testified that he did not read the SAR and that he just wanted the Court to proceed with Sentencing. Movant testified that

13

> his jailers had the SAR but would not provide it to him at the jail so he could read it.
>
> 28. At sentencing, trial counsel indicated that Movant had not yet had an opportunity to review the SAR.
>
> 29. The sentencing court asked if trial counsel and Movant needed more time to review the SAR and Movant responded, "No."
>
> 30. The sentencing court asked a second time if more time was needed and then offered to reset the case on the following Wednesday for sentencing.
>
> 31. Movant responded, "Yeah, let's proceed. There is no use in my using up everybody's time and everything."
>
> 32. The SAR indicates Movant had one prior driving with excessive blood alcohol content conviction and six prior driving while intoxicated convictions. Of the six prior driving while intoxicated convictions, five of those convictions were felony convictions. Movant also had an additional conviction for the felony of unlawful use of a weapon and three misdemeanor driving while revoked convictions.
>
> 37. The [motion] [c]ourt finds that the trial counsel did not provide ineffective assistance of counsel by pointing out errors in the SAR. Specifically, Movant claims that a reference to using methamphetamine the night before his arrest was inaccurate. At sentencing Movant's trial counsel indicated that while he had described the contents of the SAR to Movant, Movant did not have an opportunity to review the SAR. The record shows that when the trial court offered Movant additional time to review the SAR, Movant refuse the offer and asked that the case proceed to sentencing. Nothing in the SAR indicates the trial court relied on inaccurate information in sentencing Movant. In fact, the trial court never mentioned methamphetamine and instead focused on Movant's consumption of alcohol.

The sentencing transcripts [sic] shows that methamphetamine was mentioned twice during the sentencing hearing, both times by the prosecutor in a single paragraph:

> And a particular concern in the SAR for the State was the reference to the Defendant's severe substance abuse. I was particularly concerned that it indicated that there was a time period when he was around 25 years old and a time period around when he was 30 years old that he was sober. But apart from that, he has always been using typically alcohol, but also marijuana and *methamphetamine*. And that substance abuse is so severe, the State believes that he, in this particular case -- in

14

> the past he has completely disregarded the safety of others by driving while under the influence of alcohol and on this particular date, in this version of the events, he indicated he used *meth* and I believe alcohol the night before he got on the road.

Vargas did not complain during the sentencing hearing when the prosecutor brought up the SAR statement that Vargas used methamphetamine the night before his arrest. During the sentencing hearing, the court made the following statements:

> Mr. Vargas, I don't believe that you really drank from the time you woke up until the time you drove. It's my belief that the alcohol in your system was from the early morning hours before. Unfortunately, the level of alcohol in your system is what matters. It's not what you drank or when you drank. So you could still be intoxicated from drinking the day before and it looks to me that that is, in fact, what happened. You consumed such a large amount the night before that it was in your system and carried over. I don't think there is any question you were intoxicated. …
>
> No legal reason having been show why judgment and sentence should not now be pronounced, based on the evidence presented, taking into consideration the arguments of counsel, also taking into consideration that this is the Defendant's seventh -- or eighth driving while intoxicated offense, and seventh and eighth felony, it is the order, sentence, and judgment of this Court that the Defendant be sentenced to 20 years in the Department of Corrections on Count I, and seven years in the Department of Corrections on Count II. The Court is going to run those sentences concurrent as opposed to consecutive.

The mention of methamphetamine use was limited to a single paragraph in the transcript. The trial court did not identify methamphetamine use as a factor at sentencing. Instead, it focused on alcohol consumption and prior offenses. Vargas has not shown that there is a reasonable probability he would have received a lesser sentence if the SAR had omitted the sentence that used methamphetamine the night prior to his arrest. *See Eichelberger*, 134 S.W.3d at 792. The motion court's findings are not clearly erroneous.

The point is denied.

Doc. [8-11] at 11-14.

The Court must presume that the state court correctly determined the facts underlying Petitioner's dispute. 28 U.S.C. § 2254(e)(1); *Evans v. Luebbers*, 371 F.3d 438, 441-42 (8th Cir. 2004) (reviewing federal courts must "presume that the findings of fact by [the] state courts are correct" unless a petitioner has proven by clear and convincing evidence that such findings are clearly erroneous). Additionally, the Court must indulge a "strong presumption" that defense counsel's

15

conduct fell within the range of reasonable representation. *Strickland*, 466 U.S. at 689. Reviewing the record with those standards in mind, the Court finds that it contains ample support for the Missouri Court of Appeals' conclusion.

The sentencing hearing transcript indicates that the trial court twice offered Petitioner additional time to review the SAR and Petitioner declined those offers. Doc. [8-2] at 2:17-5:10. Methamphetamine was mentioned twice in a single paragraph of the hearing transcript, by the prosecutor. *Id.* at 7:1-18. In the pre-sentence colloquy, the judge did not refer to methamphetamine but relied upon Petitioner's struggle with alcohol and his numerous prior felony convictions. *Id.* at 14:13-17:22. Based upon the record, the state court could reasonably conclude that counsel's failure to object to the methamphetamine reference in the SAR was not constitutionally deficient under *Strickland*, and that decision is entitled to deference. Additionally, the Court agrees with the Missouri Court of Appeals that the record does not suggest that Petitioner suffered any prejudice, given the sentencing judge's reliance on Petitioner's prior alcohol abuse and felony convictions and not methamphetamine use. Ground 3 is denied.

### B. Ground 7: Failure to Call Petitioner to Testify

In Ground 7, Petitioner argues that his trial counsel was ineffective in failing to call Petitioner to testify. Doc. [1] at 16. The motion court denied the claim because the trial court advised Petitioner that he had an absolute right to testify on his own behalf and that he could not be forced to testify, and Petitioner thereafter stated on the record that, after consulting counsel, he did not wish to testify. Doc. [8-8] at 51.

Considering that this Court must defer to the factual findings of the state court, on review of the record, the Court concludes that the motion court reasonably described the discussion between the trial judge and Petitioner. The trial judge informed Petitioner that he was at complete liberty to testify in his defense, Doc. [8-1] at 297:21-299:8; that neither defense counsel, the court nor the prosecution would prevent Petitioner from testifying, *id.* at 299:5-13; that by testifying, Petitioner would be subject to cross-examination, *id.* at 299:14-300:9; and that neither the prosecution nor the court could compel Petitioner to testify, *id.* at 300:10-301:11. Petitioner stated on the record that had discussed the matter with his counsel and that he elected to forgo testifying at his trial. *Id.* at 302:1-13. Ground 7 is denied.

### C. Ground 8: Failure to Call Hernandez & Burwell to Testify

In Ground 8, Petitioner argues that counsel was ineffective by failing to call Rita Hernandez and Kenneth Burwell. Doc. [1] at 26. Petitioner raised this argument in his Rule 29.15 motion and

16

the motion court rejected the argument, finding that counsel was not ineffective because trial counsel is entitled to deference in matters of trial strategy and trial counsel testified that he believed the above witnesses would not offer testimony that would aid Petitioner's defense. Doc. [8-8] at 53.

When evaluating whether the failure to call a witness at trial constitutes ineffective assistance under *Strickland*, the courts "add the testimony of [the petitioner's] uncalled witness to the body of evidence actually presented at his trial." *Armstrong v. Kemna*, 590 F.3d 592, 596 (8th Cir. 2010) (quoting *McCauley-Bey v. Delo*, 97 F.3d 1104, 1105-06 (8th Cir. 1996)). Once that evidence is added, the court should consider: "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* (quoting *McCauley-Bey*, 97 F.3d at 1106).

On review of the record, the Court concludes that the motion court offers an accurate description of the hearing transcript. At the motion hearing, Petitioner's trial counsel testified that counsel had discussed Petitioner's theory that police had put a tracking device on his vehicle and that Hernandez and Burwell had information regarding that theory. Doc. [8-7] at 15:1-16:21. Counsel testified that he and his investigator looked into that theory and that he found the theory incredible and likely to both distract the jury and prejudice the case by suggesting that Petitioner was involved with illegal drugs. *Id.* at 16:7-10, 16:24-18:1. There was no evidence at the motion hearing about the specific content of Hernandez and Burwell's proposed testimony on the issue. Consequently, even if Petitioner's trial counsel's strategic decision to refrain from calling those witnesses was deficient, the Court finds no evidence to support a finding of prejudice. *Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008) ("Because of the inherently abstract nature of our *Strickland* prejudice inquiry in the uncalled-witness context, federal appellate courts generally insist on a more precise and more reliable showing of the uncalled witnesses' expected testimony than the showing made in the existing record.") (cleaned up); *see also id.* (quoting *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)). ("Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim."). Ground 8 is denied.

### D. Ground 9: Failure to protect Petitioner's Speedy Trial Rights

In Ground 9, Petitioner argues that trial counsel was ineffective for failing to ensure that Petitioner's speedy trial rights were protected. Doc. [1] at 16. Petitioner raised the same claim in his

Rule 29.15 motion and the motion court summarily denied the claim, finding that Petitioner failed to present sufficient evidence to sustain his burden of proof. Doc. [8-8] at 59, 65.

The Sixth Amendment to the United States Constitution provides, *inter alia*, that: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. CONST. amend. VI. "[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Johnson*, 990 F.3d 661, 670 (8th Cir. 2021) (quoting *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002)). "Assessment of whether a defendant's Sixth Amendment right to a speedy trial has been violated includes consideration of the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (quoting *Sprouts*, 282 F.3d 1042); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *see also Johnson*, 990 F.3d at 670 ("First, our consideration of the length of delay 'requires a double inquiry: (1) whether the length of delay was presumptively prejudicial such that it triggers the *Barker* analysis, and, if triggered, (2) the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'") (quoting *United States v. Rodriguez-Valencia*, 753 F.3d 801, 805 (8th Cir. 2014)). "A delay approaching a year may meet the threshold of presumptively prejudicial delay requiring the application of the *Barker* factors." *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

Petitioner was arrested on April 24, 2012. Doc. [8-3] at 4, 13. Petitioner's trial was set for February 27, 2013, and was moved due to inclement weather. Doc. [8-12] at 4. Petitioner's counsel later moved to schedule the trial for March 11, 2013. *Id.* And the docket sheet notes that trial was ultimately moved again from March 11, 2013, to June 26, 2013. *Id.* at 3-4. Thus, 14 months elapsed between Petitioner's arrest and trial. While the Eighth Circuit has recognized that a 14-month delay is presumptively prejudicial, it is not far beyond the bare minimum needed to trigger judicial examination of the claim. *See Johnson*, 900 F.3d at 670 (citing *Titlbach*, 339 F.3d at 699; *Rodriguez-Valencia*, 753 F.3d at 805).

Petitioner did invoke his right to a speedy trial, as his counsel filed a speedy trial request on September 10, 2012, just about three and a half months after Petitioner's arrest. Doc. [8-3] at 29. That factor weighs only minimally in Petitioner's favor, however, as his counsel later moved to continue the trial from February 27, 2013, to March 11, 2013, and there is no record that counsel objected when the trial was further continued to June 26, 2013. Doc. [8-12] at 3-4.

18

Finally, Petitioner fails to show any prejudice resulting from the 14-month period between his arrest and trial. He provides no evidence that he suffered oppressive pretrial carceral conditions or experienced anxiety. *Barker*, 407 U.S. at 532. And he provides no evidence that the delay impaired his ability to put on his defense at trial. *Id.*

After considering the *Barker* factors, the Court is not convinced that Petitioner suffered a violation of his Sixth Amendment speedy trial right. Consequently, his trial counsel's failure to take further action to protect that right does not amount to ineffective assistance. Grounds 9 is denied.

## IV.    Unconstitutionality of Criminal Statute & Ineffective Assistance of Appellate Counsel Claims

In Grounds 4 and 5, Petitioner argues that the statute under which he was convicted is unconstitutional because it allows for punishment based upon a chronic mental deficiency, and that his appellate counsel was ineffective for failing to challenge the constitutionality of the statute. Doc. [1] at 16.

The statutes defining the offenses of "driving while intoxicated" and "driving while revoked" do not refer to chronic mental deficiency. *See* Mo. Rev. Stat. § 277.010.1 (2012); Mo. Rev. Stat. § 302.321.1 (2012). The statute authorizing an enhanced punishment for certain "driving while intoxicated" convictions defines a "chronic offender" in the following manner:

> (2) a "chronic offender" is:
>
> > (a) A person who has pleaded guilty to or has been found guilty of four or more intoxication-related traffic offenses; or
> >
> > (b) A person who has pleaded guilty to or has been found guilty of, on two or more separate occasions, any combinations of the following: involuntary manslaughter under subdivision (2) or (3) of subsection 1 of section 565.024; murder in the second degree under section 565.021, where the underlying felony is an intoxication-related traffic offense; assault in the second degree under subdivision (4) of subsection 1 of section 565.060; or assault of a law enforcement officer in the second degree under subdivision (4) of subsection 1 of section 565.082;
> >
> > (c) A person who has pleaded guilty to or has been found guilty of two or more intoxication-related traffic offenses and, in addition, any of the following: involuntary manslaughter under subdivision (2) or (3) of subsection 1 of section 565.024; murder in the second degree  under 565.021, where the underlying felony is an intoxication-related traffic offense; assault in the second degree under subdivision (4) of subsection 1 of section 565.060; or assault

19

of a law enforcement officer in the second degree under subdivision (4) of subsection 1 of section 565.082.

Mo. Rev. Stat. § 577.023(2) (2012). By its plain terms, the statute defines "chronic offender" in terms of a defendant's past convictions; it says nothing about a defendant's mental health. Here, the prosecutor charged Petitioner as a chronic offender because Petitioner had a history of prior "driving while intoxicated convictions." Doc. [8-3] at 32-33. Ground 4 is denied.

Because the argument is meritless, appellate counsel did not prejudice Petitioner by failing to raise it. *See Strickland*, 466 U.S. at 714. Ground 5 is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

Dated this 31st day of March, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

20